eral character, affecting the limitations of the bankrupt act and rights of parties under it, the case may, on motion, within ten days, be adjourned to the circuit court for adjudication upon such points, at the expense of the petitioners; otherwise the motion is denied, with costs.

[NOTE. The conveyance was set aside in the circuit court, and an order entered for resale at public auction. Case No. 9,878. Subsequently the administrators of Delaplaine petitioned to have the amount paid by him refunded to them. Id. 9.879. At the public sale of this interest, it was purchased by James M. Smith. Jr. A petition was filed to set aside this last sale. Petition dismissed. 6 Fed. 685.]

## Case No. 9,878b.

### In re MOTT.

[Betts, Scr. Bk. 83.]

District Court, S. D. New York. July, 1842.

BANKRUPTCY—RULES—DEBTS OF BANKRUPT—CONSIDERATION—ASSIGNMENT FOR THE BENEFIT OF CREDITORS.

[1. An order of court, accompanying the published rules and forms, providing that they shall govern proceedings in bankruptcy, requires that their substance shall be adhered to, rather than mere forms of expression.]

[2. A rule requiring petitions in bankruptcy to state the consideration or cause of indebtedness, as to the sums represented to be owing, is not violated by failure to state the consideration of a debt which has been converted into a judgment.]

[3. An allegation by a bankrupt that he had made an assignment for the benefit of his creditors some time before the date of his petition is not open to the objection that it fails to state what estate remains undisposed of, or that it fails to give the assignment itself, if accompanied by the sworn statement that the assigned property will not pay the debts it was conveyed to provide for.]

[In the matter of the petition of Jacob H. Mott to be decreed a bankrupt. Heard on objections to the petition.]

Before BETTS, District Judge.

Objections have been taken to the petition to be decreed bankrupt, because it is not in the form prescribed by the court, omitting the consideration or cause of indebtedness, as to various sums represented to be owing, and because it does not set forth the particulars of property assigned by the bankrupt in 1840 for the satisfaction of his then existing debts. The counsel for petitioner supposes the forms imposed by the court are not obligatory; and, if the court has such power to make them so, it has not exercised it in any notorious manner. The counsel is mistaken, as the published rules and forms are accompanied by an order of this and the circuit court that they shall govern proceedings in bankruptcy. The court, however, is not tenacious of words and phrases, but requires that the substance shall be preserved and adhered to, whatever deviations there may be from mere form of expression. The court

has decided that when a debt no longer rests upon the personal undertaking of a bankrupt, but is converted into a judgment, it is unnecessary to give any other consideration, a judgment imputing the highest one in the law. So much of the objections as apply to judgments are therefore overruled. There are, however, various other items defective in alleging only an indebtedness to individuals, without any distinct disclosure of the consideration or grounds of indebtedness. A further objection is that the bankrupt alleges that he made an assignment in 1840 of all his estate and effects for the payment of his debts, but has not designated what his estate is, its location, &c. The court, in numerous cases, has decided that it is incumbent on the bankrupt to apprise his creditors and assignee what estate remains undisposed of, in cases of trust conveyance, and that this must be done by giving the assignment itself. These were, however, in cases where there was a resulting trust to the debtor manifestly unextinguished. The present case differs from those in this: that the petition and schedule nowhere represent that there is any residuary interest, as reserved to the bankrupt, and it does not therefore fall within the terms of those previous. This objection, at least, is an exceedingly sharp one, for the bankrupt swears explicitly that the assigned property will not pay the debts it was conveyed to provide for. Had the creditors charged that this reason was studied and intentional, and that the bankrupt knew that there was a contingent interest to his own benefit accompanying the assignment, and established the allegation by proof, the question as to the effect of the statement in its present form would be very different, for the matters of merit would be directly connected with the defect of form. This shows that the objections are all strictissimi juris. They involve no higher consideration than whether the petitioner has honestly and fully conformed to the forms prescribed by the court, and are undoubtedly well taken to the establishing a direction of that character. It is better that all parties should feel the necessity of adhering to an uniform course of practice, and that no deficiency or uncertainty of information to creditors should be encouraged in the framing of bankrupt papers, and therefore the court places this in the category of those where the party has made default in complying with the rules, and holds that the bankrupt cannot proceed on these papers without perfecting them by a proper amendment. This order, however, is not to carry any costs against the bankrupt.

[NOTE. Subsequently this case was heard upon an application to set aside the sale by the assignee to Isaac C. Delaplaine of the interest of the bankrupts in the estate of their grandfather John Hopper. The court allowed the petitioners to move the case into the circuit court. Case No. 9,878a. The conveyance was set aside in the circuit court. Id. 9,878. At a later date the administrator of Delaplaine petitioned

to have the amount paid by him refunded to them. Id. 9,879. There was another sale of this same interest at public auction in 1868. at which sale it was purchased by James M. Smith, Jr. A petition was filed to set aside this sale. The petition was dismissed. 6 Fed. 685.]

---

## Case No. 9,879.

### In re MOTT et al.

[1 N. B. R. (1873) 223 (Quarto. 9).][1]

District Court, S. D. New York.

BANKRUPTCY—CONTRACT WITH ASSIGNEE—APPLICATION TO HAVE AMOUNT PAID REFUNDED.

Where the general assignee of the bankrupt made certain conveyances of the real estate, the administrators of the grantee made application to have the amount paid on the contract of sale refunded, which was denied for the reasons that the contract of sale was not delivered up to be cancelled, and further that there was a failure to show that the transaction with decedent was made in good faith by the general assignee.

[In the matter of Jacob H. Mott and Jordan Mott, bankrupts.]

G. B. Goldsmith, for petitioners.

BLATCHFORD, District Judge. When the questions in regard to the sales and transfers made to Isaac C. Delaplaine by the general assignee in bankruptcy in these cases were before the circuit court for this district in December, 1863, by adjournment from this court, Mr. Justice Nelson, in his opinion delivered in the matter, said that not only ought the orders of this court of the 28th of February, 1860, for the making of the sales in question, to be set aside, but the conveyances made under those orders by the general assignee to Delaplaine ought to be delivered up and cancelled, and the money paid by him and deposited in this court, amounting to $800, ought to be refunded to him, and the money paid by him to the general assignee and not so deposited amounting to $200, ought to be refunded to him by the general assignee, and that this court had power to make an order to that effect. [Case No. 9,878.] Judge Betts, in disposing of the matter in this court on the decision by the circuit court of the questions adjourned into that court, delivered a written opinion in which, after deciding that the proceedings to obtain the orders of sales were irregular, and that the sales were void, and ought to be set aside, he said: "If the purchase made by Delaplaine from the general assignee was bonâ fide, and in the belief that the power exercised on the occasion was rightly and fairly used by the general assignee in his behalf, it is competent for the court, if necessary, to afford the said Delaplaine relief against the erroneous proceedings, by compelling the restoration to him of the consideration paid by him on such void sale." It appears from the papers on file in these matters that on the 29th of February, 1860, the general as-

[1] [Reprinted by permission.]

signee made conveyances to Delaplaine in pursuance of the sales, the conveyances being of interests of the bankrupts in certain real estate, and received from Delaplaine as the purchase money, $800, being $400 in each case, which sum of $800 was paid into this court, and is still in court, and also received from Delaplaine $200 for his "legal professional services" in the matters, which latter sum he has retained. It also appears from an affidavit made by Delaplaine on the 14th of December, 1860, that after his purchase from the general assignee, he employed a person by the name of Irving to ascertain the market value of the purchased property; that Irving had no authority to offer it for sale, but that having been informed by Irving of an offer he had made of it, he, Delaplaine, expressed his regret, but declared that as the offer had been made he would confirm what Irving had done. It also appears from the files of the court that Irving on the 14th of June, 1860, made a written offer on behalf of Delaplaine to sell for $20,000 what had been conveyed to Delaplaine by the general assignee.

An order was made by this court on the 17th of June, 1864, in pursuance of the decision of Judge Betts, before referred to, decreeing that the sale to Delaplaine was void, and that the orders of sale be revoked and annulled, and that the general assignee proceed in the due course of the administration of the duties of his office, and dispose of the assets of the bankrupts in his hands, and distribute the same according to law. The order made no provision in regard to paying any money back to Delaplaine, probably for the reason that Delaplaine made no application to court for that purpose, and still adhered to his purchase, as evidenced by the fact that he did not offer to deliver up for the purpose of cancellation, the conveyances which had been made to him by the general assignee. Delaplaine having died in July, 1866, his administrators now apply to this court by petition, praying for the refunding to them of the $1,000. But they do not offer to deliver up to be cancelled the conveyances made by the general assignee to Delaplaine; nor do they show that Delaplaine never assumed to dispose of what purported to be conveyed to him; nor do they show that Delaplaine never realized anything from a sale of the interests, or what disposition he made of them; nor do they show, in accordance with a view taken by Judge Betts in his opinion, that the purchase made by Delaplaine was bonâ fide, and in the belief that the power exercised on the occasion was rightly and fairly used by the general assignee in his behalf. The purchase for $800, with a fee of $200 to the general assignee, of what the purchaser less than four months afterwards held for sale at $20,000, would seem pretty conclusively to repel the idea that there could have been any bona fides in the transaction on the part of Delaplaine, or any belief on his part that the